IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:97-CR-00024 |
| v. | ) |
| | ) |
| RAYED FAWZI ABED, | ) |
| | ) By: Michael F. Urbanski |
| Defendant | ) Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Rayed Fawzi Abed's motion for early termination of supervised release. ECF No. 892. For the reasons stated below, the court **DENIES** Abed's motion.

In 1998, Abed was convicted of racketeering, racketeering conspiracy, conspiracy to commit arson, aiding and abetting arson, aiding and abetting use of a destructive device in a violent crime, conspiracy to distribute narcotics, and bribery of public officials and witnesses. He was sentenced to a term of imprisonment of 438 months. ECF No. 443. On December 5, 2019, Abed's conviction for use of a destructive device to commit a violent crime was vacated and he was resentenced to 300 months, to be followed by a 3-year term of supervised release. ECF No. 887.[1] The effect of the reduced sentence was to allow for his immediate release from custody.

Abed began serving his term of supervised release on December 10, 2019 and has served approximately 28 months of his 3-year term. While on supervision, he has been

---

[1] Abed's case is discussed at length in the Memorandum Opinion issued on September 11, 2019, ECF No. 751. The factual and procedural history of his case will not be repeated here except as necessary to address his motion.

1

continually employed and currently works at both a full and part-time job. ECF No. 892-1. Abed moves for termination of supervised release based on his compliance with the terms of release and also because he would like to travel to Palestine, his family's country of origin.

The court sought input from the United States Probation Officer who supervises Abed. The officer confirmed that Abed has done well on supervision and the officer does not oppose early termination. The officer added that Abed had one positive marijuana screen but "blamed it on a vape" and was very open and honest with the officer. The officer also reported that Abed had an altercation with another person who is on supervised release, but Abed was not at fault, called the officer after the incident, and reported the incident to the police.

The government opposes early termination of Abed's term of supervised release, based on the nature of his offenses and the people who were victimized by his behavior. In addition, the government argues that if Abed wishes to travel to Palestine, he may petition the court for permission to do so.

Pursuant to 18 U.S.C. § 3583(e), a court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a term of supervised release at any time after the expiration of one year of supervised release if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice. The following factors are to be considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of

sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the United States Sentencing Guidelines; (5) any pertinent policy statement issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Courts have discretion to grant early termination of supervised release, even when the conditions for termination are met. Folks v. United States, 733 F.Supp.2d 649, 651 (M.D.N.C. 2010). In addition, the inquiry is broader than the individual's conduct. Id. (citing United States v. Pregent, 190 F.3d 279, 282-83 (4th Cir. 1999)). "Circumstances that justify early discharge have included exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Id. (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination. Id. at 652 (collecting cases). But "[a]llocation of scarce resources counsels in favor of terminating supervision in cases . . . where services and oversight are no longer needed." United States v. Lyons, No. CR DKC 13-0282-3, 2020 WL 7769782, at *2 (D. Md. Dec. 30, 2020) (granting motion for early termination of supervised release where the parolee, convicted of a drug trafficking conspiracy and possession of a firearm in furtherance thereof, was transitioning "very well" and he consistently tested negative in random drug testing).

Turning to the § 3553(a) factors, the court finds that the nature and circumstances of the offense and the history and characteristics of the defendant weigh against early termination of supervision. The facts of Abed's crimes are set out in the Pre-Sentence Investigation Report (PSR) and are well known to the court. Abed and his co-defendants participated in a well-organized conspiracy that set fire to a number of properties, including properties owned by co-defendants that were destroyed in an attempt to collect insurance proceeds, and properties owned by business competitors. PSR, ECF No. 802 ¶ 22-23. Abed and his codefendants also engaged in drug dealing, robbery, burglary, theft, assault, and bribery of a witness. Id., ¶¶ 31, 33, 36, 37, 38, 40, 41, 44, 45, 47. In addition, prior to incarceration in 1997, Abed had a long series of offenses he committed as a juvenile and young adult. The offenses included credit card fraud, brandishing a firearm, assault and battery, breaking and entering, malicious wounding, and grand larceny. Id., ¶¶ 89, 90, 91, 93, 95, 96, 97, 99, 101, 102, 104, 106. The serious nature of Abed's offenses and his extensive criminal history warrant a continued period of supervision.

Regarding Abed's history and characteristics, while he was a violent young man, he matured in prison. For the last 17 years Abed spent in federal custody he had no disciplinary infractions and although he had a few infractions prior to that time, none were serious. Sent. Mem., ECF No. 794 at 2. He worked for UNICOR while incarcerated and was described by his supervisor as "honest, hard-working, and reliable." Id. at 3. In 2002, his institutional record described him as a willing worker who needed little supervision and was dependable and prompt. Id. The fact that Abed showed signs of true change while incarcerated weighs in favor of early termination.

4

Looking at the second § 3553(a) factor, the court notes that while Abed appears to have done well on supervised release and his employment record is admirable, his period of supervision has not been without incident. The court recognizes that the officer providing Abed's supervision has been satisfied with Abed's explanations of the positive marijuana screen and his altercation with another person on supervised release. Nevertheless, the incidents raise issues about the company Abed is keeping while he is on supervised release.

Regarding the range of supervised release terms for the category of offense committed by Abed, he faced a maximum term of 3 years of supervised release for his offenses. Id. at 134, 135, 136. This factor weighs neither in favor nor against early termination.

Turning to the need to avoid unwarranted sentencing disparities among defendants, two of Abed's co-defendants, Obadya Hanafie Abed and Fahad T. Tawalbeh, also were sentenced to 3-year terms of supervised release when their sentences were reduced to time served. ECF No. 810, 884. In order to avoid unwarranted sentencing disparities, this factor weighs in favor of Abed serving his full term of supervised release. None of the remaining § 3553(a) factors weigh either in favor or against early termination of supervised release.

Having considered the § 3553(a) factors and the opinion of the probation officer overseeing Abed's supervised release, the court **DENIES** Abed's motion for early termination. To be sure, Abed's accomplishments since his release are impressive. Nevertheless, the court remains concerned about the positive marijuana screen and the fact that he was involved in an altercation with another person on supervised release, even though he does not appear to have been at fault. The conditions of supervision state that he is not to possess a controlled substance and that he must refrain from any unlawful use of a controlled

substance. Another condition of supervision provides that Abed must not knowingly communicate or interact with a person who has been convicted of a felony without first getting the permission of his probation officer. J., ECF No. 807 at 4-5. Although the probation officer was satisfied with Abed's explanation of both of these incidents, the court believes that early termination of supervision should be reserved for people whose compliance with the conditions of supervision is unquestionable. Having Abed continue on supervised release will provide him with an additional period of guidance and also serve to protect the community.

An appropriate order will be entered.

It is so **ORDERED**.[2]

ENTERED: 03-31-2022

_____
Michael F. Urbanski
Chief United States District Judge

---

[2] Abed was represented in the motion by the Federal Public Defender (FPD). The United States questions the appropriateness of this representation because the habeas corpus matter for which the FPD was initially appointed has concluded and the FPD was not reappointed to represent Abed in the instant motion. In addition, the United States questions whether Abed financially qualifies for representation, given that he is currently employed. While these are interesting questions, they are outside the scope of the pending motion and are not addressed.

6